UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| STEVEN GLEN SHEPPARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:05-cv-0467-DFH-TAB |
| | ) | |
| WILLIAM F. WELCH and | ) | |
| CANDI X. HALEY, | ) | |
| | ) | |
| Defendants. | ) | |

ENTRY ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Steven Glen Sheppard filed this § 1983 action against defendants

William F. Welch and Candi Haley.  Welch is the supervising deputy prosecutor

for the Title IV-D child support division of the Monroe County Prosecutor's Office.

Haley is a Title IV-D caseworker in the same division.

Sheppard alleges that after the Monroe Circuit Court issued a final custody

and child support order against him, the defendants then issued non-judicial

orders to seize a bank account and to garnish his wages.  According to Sheppard,

the defendants failed to follow applicable state law when taking these actions.  He

has not sued to enforce state law.  Instead, he alleges that the defendants' actions

deprived him of property without due process of law in violation of the Fourteenth

Amendment to the United States Constitution.

The court earlier denied defendant Welch's motion to dismiss the action for lack of jurisdiction and failure to state a claim upon which relief can be granted. *Sheppard v. Welch*, 2005 WL 1656873 (S.D. Ind. July 5, 2006).   After an opportunity for discovery, defendants Welch and Haley each moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.   For the reasons explained below, summary judgment is granted for both Welch and Haley.

*Summary Judgment Standard*

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).   Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, affidavits, and other materials demonstrate that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).   The moving parties must show there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   A factual issue is material only if resolving the factual issue might change the suit's outcome under the governing law. *Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992).   A factual issue is genuine only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the evidence presented. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   In deciding a motion for summary judgment, a court may not assess the credibility of witnesses, choose between competing inferences, or

balance the relative weight of conflicting evidence; it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of that party.   See Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 255.

*Facts for Summary Judgment*

In light of this standard, the court treats the following facts as true for purposes of defendants' motions for summary judgment.   Defendants Welch and Haley are employees of the Monroe County Prosecutor's Office.   Welch is the deputy prosecutor in charge of the Title IV-D Child Support Division.   His duties include establishing the procedures by which the employees in the office collect child support in Monroe County.   Haley is a Title IV-D caseworker within this same division.

In June 1993, the Monroe Circuit Court adjudged plaintiff Sheppard the father of a child born in 1991 and ordered him to pay $10 per week in child support.   The court also entered an initial child support arrearage of $420.00. Though his tax returns were garnished for several years, the plaintiff's child support arrearage continued to accrue, as he apparently made little to no effort to pay the court-ordered amounts.

I.      *Seizure of Sheppard's Bank Account*

At some point in early 2003, defendant Haley learned that Sheppard maintained a savings account at the Indiana University Employees Federal Credit Union ("Credit Union").  On April 2, 2003, Haley issued an extra-judicial "Bank Account Withholding Order" to the Credit Union directing it to withhold all funds in the plaintiff's account up to $4,266.81, and then to forward the withheld funds to the Clerk of the Monroe Circuit Court.  Sheppard did not receive any prior notice of this withholding order.  Sheppard also claims, and the court assumes, that Haley was following an office policy established by Welch when she issued the Bank Account Withholding Order without providing prior notice to Sheppard.  The Credit Union complied with the Withholding Order; it seized the $145.41 balance from Sheppard's account and forwarded the funds to the Clerk of Court.

After Sheppard learned that his bank account had been seized, he took two actions.  The very day that Sheppard learned of the seizure, and acting on advice of counsel, he went to the Prosecutor's Office and filed a request to limit any wage garnishments to $10 per week for child support and $5 per week toward his arrearage.  By Sheppard's own admission, he spoke only to the person at the receptionist window when he submitted this request.  He did not have "any discussion about monies or anything." Sheppard Dep. at 10.  Sheppard also filed a petition in the Monroe Circuit Court seeking to vacate that court's child support order against him.  In his petition, Sheppard argued that he had an agreement with the Prosecutor's Office to limit his child support payments.  The trial court

denied his petition, and the denial was affirmed on appeal.  In this case, Sheppard acknowledges that this would have been the only issue he would have raised if he had had the opportunity for a hearing before the seizure of his savings and the garnishment of his wages.  Sheppard Dep. at 37.

II.    *Garnishment of Sheppard's Wages*

On September 20, 2004, Haley issued an extra-judicial "Wage Withholding Order" to Sheppard's employer, Indiana University, directing the university to withhold $10 per week for current child support obligations and $30 per week to reduce the existing child support arrearage.  As with the earlier Bank Account Withholding Order, Sheppard did not receive any prior notice before this Wage Withholding Order was issued.   Indiana University complied with the Wage Withholding Order and withheld a total of $960 from October 8, 2004 to March 11, 2005.  Again, Sheppard claims and the court assumes that Haley was following Welch's office policy when she failed to give Sheppard notice before issuing the Wage Withholding Order.

Indiana law requires a prosecutor to give prior notice to a parent before issuing non-judicial orders to seize a savings account and to garnish wages.  See Ind. Code §§ 31-16-15-3 and -7.  Sheppard does not seek relief under state law, but alleges that these violations of state-mandated procedures violated his federal constitutional rights.  He seeks relief under 42 U.S.C. § 1983.

*Discussion*

To establish a deprivation of property without due process of law, Sheppard must show (1) that the offending actions were taken by someone acting under the color of state law; (2) that the conduct deprived him of a constitutionally protected property interest; and (3) the alleged deprivation occurred without due process of law. See *Germano v. Winnebago County*, 403 F.3d 926, 927 (7th Cir. 2005). Defendants Haley and Welch do not deny that they were acting under the color of law, nor do they deny that the plaintiff had a property interest in his seized bank account and garnished wages. At issue here is the third step of the § 1983 inquiry, whether the plaintiff's due process rights were violated when the defendants failed to follow the pre-deprivation procedure required by Indiana state law before withholding child support from plaintiff's savings and wages.[1]

I.     *State Law Requirements*

As a matter of state law, the plaintiff correctly notes, the defendants were required to provide both notice and an opportunity to be heard before issuing the

---

[1]The defendants make several arguments in their motions for summary judgment. Defendant Welch argues that he cannot be held liable under § 1983 because he: (1) is not a municipality, (2) was not personally involved in issuing Sheppard's withholding orders, and (3) enjoys various immunities from liability for damages. Defendant Haley argues that: (1) the plaintiff's due process rights were not violated, (2) the plaintiff suffered no damages, (3) Haley is entitled to qualified immunity, and (4) the plaintiff's claims for declaratory and injunctive relief are moot. Because the court finds that the plaintiff has not come forward with evidence of a federal due process violation, the court does not reach the other issues raised by the defendants.

two withholding orders.  The Prosecutor's Office has the power to issue income withholding orders absent judicial authorization, but it must comply with the notice requirements of Indiana Code § 31-16-15-7 to do so.  See Ind. Code § 31-16-15-3.

The section titled "Notice to obligor of activation of order or implementation of income withholding" provides:

> Whenever an income withholding order is to be:
>
> (1)    activated in a case arising under section 5 of this chapter; or
>
> (2)    implemented by a Title IV-D agency under section 3 of this chapter despite the absence of a withholding order in the support order;
>
> the Title IV-D agency shall send a written notice to the obligor.

Ind. Code § 31-16-15-7(a).  The notice must state:  "That an obligor may contest the Title IV-D agency's determination to activate income withholding by making a written application to the Title IV-D agency not later than twenty (20) days after the date the notice is mailed."  Ind. Code § 31-16-15-7(b)(7).  In regards to the Wage Withholding Order sent to Sheppard's employer, it is apparent that in the absence of a judicial order, the Prosecutor's Office (as a Title IV-D agency) was obliged to send notice and to give Sheppard an advance opportunity to contest the withholding.  See *Flowers v. Flowers*, 799 N.E.2d 1183, 1189 (Ind. App. 2003).  The Prosecutor's Office was under the same requirement before seizing Sheppard's savings account.  The Indiana Court of Appeals has made clear that "income" for purposes of wage withholding includes the bank accounts of child support

obligors.  See *In re Paternity of S.J.S.*, 818 N.E.2d 104, 109 (Ind. App. 2004).  In this case, Sheppard has testified that he never received any notice whatsoever before his savings and wages were garnished.  Defendant Haley acknowledges that the Bank Account Withholding Order was sent without the necessary prior notice and asserts that the omission was "a mistake."  Haley Dep. at 6.  Viewing the evidence in the light most favorable to Sheppard, he did not receive the pre-deprivation notice mandated by state law.

II.     *Federal Due Process Requirements – "Random and Unauthorized" Deprivation*

The defendants' failures to comply with state law do not necessarily mean that Sheppard's federal due process rights under the United States Constitution were violated.  As the Seventh Circuit has often explained:  "A violation of state law . . . is not a denial of due process, even if the state law confers a procedural right."  *Osteen v. Henley*, 13 F.3d 221, 225 (7th Cir. 1993).  Rather than ask whether state law was violated, the court must instead determine whether *federal* due process standards were violated.  See *id.* ("standard of due process is federal"), citing *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 541 (1985).  To this end, a long line of cases have considered what process is constitutionally mandated when state actors deprive someone of a property interest without following applicable state statutes and procedure.

In *Parratt v. Taylor*, a prisoner filed a § 1983 action against state prison officials over the negligent loss of his mail-order hobby kit.  *Parratt v. Taylor*,

451 U.S. 527, 530 (1981).  The state had established pre-deprivation procedures that should have been adequate to protect the plaintiff's property interests, but the state employee failed to follow the procedures.  *Id.* at 543.  The Supreme Court reasoned that when state officers deprive someone of property through such "random and unauthorized" acts, it is impractical to expect states to provide a hearing before the deprivation occurs.  *Id.* at 541.  Instead, due process is satisfied if the state provides an adequate post-deprivation remedy.  *Id.* at 544.  The Court subsequently expanded this analysis of "random and unauthorized" actions to include instances where individual state officials intentionally deprived people of their property in violation of state law or procedure.  *Hudson v. Palmer*, 468 U.S. 517, 534 (1984).  On the other hand, when the deprivation is the result of a state actor's predictable and authorized conduct, a federal due process claim may be viable.  See *Zinermon v. Burch*, 494 U.S. 113, 136-39 (1990) (holding that *Parratt* did not apply where state law gave state actors discretion to act as they did, by admitting plaintiff as "voluntary" mental health patient despite belief that patient was incompetent to give valid consent).

The Seventh Circuit has provided further guidance on the applicability of *Parratt* and *Hudson* and *Zinermon*.  See *Veterans Legal Defense Fund v. Schwartz*, 330 F.3d 937, 940 (7th Cir. 2003); *Easter House v. Felder*, 910 F.2d 1387, 1396-99 (7th Cir. 1990) (*en banc*).  In *Easter House* a state official revoked an adoption agency's interim operating status without first holding the pre-deprivation hearing mandated by Illinois law.  910 F.2d at 1401.  The Seventh Circuit ultimately

reversed a jury verdict in favor of the plaintiff and ordered judgment for the defendants.  The court held that the *Parratt* rule applied because the state official's actions were "patently inconsistent with [state] law and constituted an outright departure from the authority which the [defendant state official] was granted under governing statutes and regulations."  *Id.*[2]

The court finds *Parratt* and *Easter House* controlling in this case.  It is clear that the pre-notice seizures of Sheppard's wages and savings were both random and unauthorized.  Indiana adopted section 31-16-15-7 to ensure that child support obligors were given both notice and an opportunity to be heard before their wages are seized without judicial action.  Indiana's statutory scheme has no loopholes; if faithfully administered, it provides adequate due process protection to obligors before any deprivation takes place without judicial authorization.  The only way that an obligor could be deprived of his wages and savings without prior notice was if an employee acted in an unforeseen way, one that was  inconsistent with state law.  Unlike the state law in *Zinermon*, the Indiana statute does not give the Prosecutor's Office discretion to decide whether to provide advance notice and an opportunity for a hearing.  The evidence in this case shows no more than unauthorized and unpredictable violations of state law:  defendant Haley – acting under direction from defendant Welch – acted in a manner wholly inconsistent

---

[2]The Seventh Circuit also distinguished the case from *Zinermon* on the basis that the state had "adopted a procedure which provided adequate due process protection; it contained no loopholes which would allow a deprivation to occur without due process unless state employees acted in an unforeseen way."  *Easter House*, 910 F.2d at 1404.

with Ind. Code § 31-16-15-7 when she failed to send Sheppard notice prior to issuing the two income withholding orders.  From the state's perspective, the actions of the defendants were unpredictable, random, and unauthorized.  The reasoning of *Parratt* applies, and the Fourteenth Amendment did not require a pre-deprivation hearing.

Plaintiff has offered the affidavit of Eddie Ray Gilliland, who claims that he – like Sheppard – also did not receive notice before the Monroe County Prosecutor's Office acted to seize his bank account.  Sheppard seeks to avoid the *Parratt* rule by showing that "the policymaker [presumably Welch] repeatedly deviate[d] from the formally established policy and procedure until his practice and custom has replaced the formal policy and procedures."  See *Easter House v. Felder*, 910 F.2d at 1403.  Despite the high-volume of child-support collection, the plaintiff has come forward with evidence of only this one additional incident where the Monroe County Prosecutor's Office allegedly failed to provide a child support obligor notice before issuing a non-judicial withholding order.  It would be unreasonable, particularly in light of the nature of child support enforcement, to conclude that such actions constituted a practice or custom that effectively replaced state law in Monroe County.  Also, even if Welch in fact ordered case workers to withhold pre-deprivation notices from Sheppard and Gilliland, he cannot properly be characterized as a "policymaker" capable of creating new procedures for the State of Indiana or even the Monroe County Prosecutor's Office.  Rather, by enacting the comprehensive and mandatory section 31-16-15-7, the

Indiana legislature took on the role of policymaker, to which Welch was completely subordinate.

III.    *Post-Deprivation Remedies*

When a deprivation of property without notice is random and unauthorized, a federal due process claim may still be viable unless an adequate post-deprivation remedy is available.  See, *e.g.*, *Hudson v. Palmer*, 468 U.S. at 533 ("For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable post-deprivation remedy").  A post-deprivation remedy is adequate if it is not "meaningless or nonexistent."  *Hamlin v. Vaudenberg*, 95 F.3d 580, 585 (7th Cir. 1996).   Defendant Haley argues that the plaintiff has numerous meaningful tort remedies available in state court, such as claims for trespass, trover, conversion, and replevin.  Plaintiff offers two arguments as to why these state law remedies are inadequate in this case.  First, he argues that the Indiana Tort Claims Act ("ITCA") confers immunity on the defendants for damages arising from the enforcement of the child support order.  Second, Sheppard notes that Indiana law exempts the Title IV-D agency and its agents from compensating the alleged obligor for attorney fees and costs incurred in a child support collection action.

A.    *Defendants' Immunity from Tort Liability*

The plaintiff is correct in asserting that the defendants are immune from tort liability under the ITCA.  The ITCA provides:  "A governmental entity or an employee acting within the scope of the employment is not liable if a loss results from . . . The initiation of a judicial or an administrative proceeding."  Ind. Code § 34-13-3-3(6).  The Indiana Court of Appeals has explicitly interpreted this language to grant immunity for actions undertaken by a prosecutor's office to enforce child support orders.  *Clifford v. Marion County Prosecuting Attorney*, 654 N.E.2d 805, 810 (Ind. App. 1995).

The effect of such state-granted immunity on the adequacy of post-deprivation remedies is an interesting question.  The Supreme Court has yet to settle the matter conclusively.  See *Daniels v. Williams*, 474 U.S. 327, 333 n.1 (1986) ("we need not decide whether, as petitioner contends, the possibility of a sovereign immunity defense in a Virginia tort suit would render that remedy 'inadequate' under *Parratt* and *Hudson*").  In dicta, the Seventh Circuit has recognized the possibility that state-granted immunity can render state law remedies inadequate.  *Surplus Store & Exch., Inc. v. City of Delphi*, 928 F.2d 788, 790 n.2 (7th Cir. 1991) (observing that the ITCA "may fail to provide an adequate remedy" because of its immunity provisions, but concluding that immunity did not apply under the facts of the case); see also *Grosz v. Indiana*, 730 F. Supp. 1474, 1480 (S.D. Ind. 1990) (Tinder, J.) ("if procedural due process requires a *meaningful* opportunity to be heard, then it seems that immunity in state court would

-13-

foreclose such an opportunity and render the remedy inadequate.") (emphasis in original).  The Eleventh Circuit has firmly taken the opposite approach.  See *Powell v. Georgia Dept. of Human Res.*, 114 F.3d 1074, 1082 n.11 (11th Cir. 1997) ("The sovereign immunity enjoyed by the county and the government official does not render appellant's state law remedy inadequate under *Parratt.*"), citing *Rittenhouse v. DeKalb County*, 764 F.2d 1451, 1459 (11th Cir. 1985).

This question of immunity is best left for another day, however, because the specific facts of this case show the plaintiff had available adequate post-deprivation remedies not barred by the ITCA.  Regardless of whether defendants or their employing office would be immune from damages for tort claims, Sheppard could have brought an action for mandate as allowed by Indiana law. Ind. Code § 34-27-3-1; see *State ex rel. Indiana State Board of Finance v. Marion County Superior Court*, 396 N.E.2d 340, 343 (Ind. 1979) ("it is proper for a court to mandate an administrative agency to act in accordance with its statutory duties").  The Seventh Circuit and other federal courts have upheld mandamus remedies as adequate state law remedies for purposes of the *Parratt* rule.  See *New Burnham Prairie Homes, Inc. v. Burnham*, 910 F.2d 1474, 1480 (7th Cir. 1990) (affirming dismissal of due process claim); accord, *Collyer v. Darling*, 98 F.3d 211, 227 (6th Cir. 1996); *Nicholson v. Moates*, 135 F. Supp. 2d 1185, 1191 (M.D. Ala. 2001).  The fact that an action in mandate does not offer money damages does not render it inadequate for purposes of *Parratt* and *Hudson*.  See *Hamlin v. Vaudenberg*, 95 F.3d 580, 585 (7th Cir. 1996) (upholding the adequacy of state

remedial procedures that could not offer money damages).  Here, Sheppard could have filed for mandamus to force the Prosecutor's Office to provide the hearings that Indiana law requires.  Because of the availability of this remedy under Indiana law, the plaintiff was afforded all the process due in the wake of Welch's and Haley's alleged violations of Indiana's legal requirements.[3]

B.   *Costs and Attorney Fees*

Sheppard points out that state law – unlike § 1983 – bars him from recovering attorney fees and court costs.  This inability to recover attorney fees and costs does not render inadequate the state-provided remedy.  Indiana Code § 31-16-11-2 provides:  "Neither costs or [sic] attorney's fees may be taxed against an agency, or the agency's agents, that is authorized to maintain proceedings under this chapter, IC 31-16-2 through IC 31-16-10, or IC 31-16-12 by Title IV-D of the federal Social Security Act (42 U.S.C. 651 through 669) and IC 12-17-2-21."  The Supreme Court has made clear that a state post-deprivation remedy can still provide due process even though the plaintiff would recover less than in a § 1983 action.  *Hudson*, 468 U.S. at 535.  The Seventh Circuit – construing *Hudson* – has held that the inability to recover attorney fees does not render state remedies inadequate.  *Gable v. City of Chicago*, 296 F.3d 531, 540 (7th Cir. 2002).  As *Hudson* and *Gable* make clear, the fact that Sheppard may not recover his

---

[3]To the extent that the plaintiff can claim that he was deprived of a property interest in his right to a hearing (separate and apart from his property interest in the seized wages and savings), an action in mandate also represented an adequate post-deprivation remedy.

-15-

litigation expenses by turning to state remedies does mean that the defendants violated his federal constitutional rights.

IV.   *Purpose of the Pretermination Hearing*

Though the court grants summary judgment based on the random and unauthorized nature of the alleged deprivations, coupled with the availability of an adequate post-deprivation remedy, it is worth noting another problem with Sheppard's claim.  While Sheppard complains about the lack of a pre-deprivation hearing, he has offered no evidence to suggest that this hearing could have actually affected the ultimate garnishment of his wages and salary in any way. The defendants' "failure to provide a hearing does not violate due process so long as the claimant does not contest the legitimacy of the underlying deprivation," *Rector v. City & County of Denver*, 348 F.3d 935, 943-44 (10th Cir. 2003), for "the Constitution does not protect procedure for procedure's sake." *Id.*

In *Codd v. Velger*, 429 U.S. 624 (1977), the Supreme Court considered a case where a police officer was terminated with information about an earlier suicide attempt in his file.  The officer argued that he was never afforded a hearing regarding the stigmatizing information, but the critical fact was that he did not dispute the truth of the suicide report.  *Id.* at 626.  The Supreme Court affirmed a judgment for the defendants.  The Court noted that "if a hearing mandated by the Due Process Clause is to serve any useful purpose, there must be some factual dispute . . . which has some significant bearing on the employee's reputation." *Id.*

at 627.  The lack of "any such allegation or finding is fatal to respondent's claim his claim under the Due Process Clause." *Codd*, 429 U.S. at 627; see also *Rector*, 348 F.3d at 944 (reconciling *Codd* with the Supreme Court's holding in *Carey v. Piphus*, 435 U.S. 247 (1978)).  Like the plaintiff in *Codd*, plaintiff Sheppard does not allege any dispute that could have altered the seizure of his savings and wages.  Sheppard does not contest (or at least can no longer contest) that he is the father of the child in question, that he is liable for child support, or that the garnished funds were protected by any statutory exemption.  Indiana's statute governing his right to a pre-deprivation hearing states: "That the only basis for contesting activation of income withholding is a mistake of fact."  Ind. Code § 31-16-15-7.  Sheppard acknowledges that he would have raised only an issue of law, one that he has already had ample opportunity to litigate.  Sheppard Dep. at 35.[4] Based on this record, there is no basis to conclude that the defendants' alleged failure to provide a hearing could have had any impact on the ultimate disposition of Sheppard's wages and salary.

### Conclusion

For the foregoing reasons, the court grants the defendants' motions for summary judgment.  Final judgment shall be entered accordingly.

---

[4]The only matter Sheppard claims he would have raised in his pre-deprivation hearing was an alleged agreement he reached with the Prosecutor's Office regarding his child support payments.  Sheppard Dep. at 34. This was an issue Sheppard admits he has previously argued and lost before the state courts in his petition to vacate the child support order.  *Id.* at 35.

So ordered.

Date:   10/31/06

DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Cynthia B. De Nardi
INDIANA STATE ATTORNEY GENERAL
cynthia.denardi@atg.in.gov

Betsy M. Isenberg
INDIANA STATE ATTORNEY GENERAL
betsy.isenberg@atg.in.gov

G. Jayson Marksberry
STEPHENSON MOROW & SEMLER
jmarksberry@stephlaw.com

Rudolph William Savich
rsavich@aol.com

Ronald J. Semler
STEPHENSON MOROW & SEMLER
rsemler@stephlaw.com

James S. Stephenson
STEPHENSON MOROW & SEMLER
jstephenson@stephlaw.com